IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

D.R.,[1]

       Plaintiff,

v.                                  Case No. 25-4071-JWB

FRANK BISIGNANO,
Commissioner of Social Security,

       Defendant.

## MEMORANDUM AND ORDER

This matter is before the court on Plaintiff's action requesting judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability benefits. (Doc. 11.) Plaintiff and the Commissioner have each filed a brief. (Docs. 11, 17.) Plaintiff has not filed a reply and the time for doing so has passed. This matter is therefore ripe for decision. For the reasons stated herein, the decision of the Commissioner is AFFIRMED.

## I.    Facts

On September 29, 2023, D.R. ("Claimant" or "Plaintiff") filed an application for disability insurance benefits with the Social Security Administration ("SSA") under Title II of the Social Security Act (the "Act"). (Doc. 6-3 at 19.) D.R.'s alleged onset date ("AOD") was originally May 1, 2018, but was later amended to September 1, 2020. (*Id*. at 19, 22; *see* Doc. 6-5 at 114.)

Claimant's hearing took place on March 11, 2025. (Doc. 6-3 at 19.) At the time of his hearing, Claimant was approximately 40 years of age, received disability benefits from the Department of Veterans Affairs ("VA"), and required a caregiver—his wife—who assists him with daily functions, medications, and navigating public settings. (Doc. 11 at 2, 4.) His physical

---

[1] The court will use Claimant's initials for privacy concerns.

impairments stem in part from a service-related knee injury sustained when jumping from a tower. The injury resulted in subsequent knee surgery in 2010 and chronic instability that necessitates the use of a cane and occasionally a rollator/walker to provide a seat when fatigued.  (*Id*. at 2, 11.)  His mental impairments include service-related post-traumatic stress disorder ("PTSD"), bipolar disorder, and schizoaffective disorder, which feature auditory and visual hallucinations—often triggered by loud noises—that he describes as disruptive to his ability to focus or remain on task without separating himself from his surroundings.  (*Id*. at 2, 5–7, 10.)

Following the hearing, the ALJ denied the claim for benefits in a decision dated April 4, 2025.  (*Id*. at 19–34.)  Claimant requested review of that decision by the Appeals Council, which was denied.  (*Id*. at 2–5.)  At the March 11 hearing, the ALJ determined that Claimant had the following severe impairments: PTSD, bipolar affective disorder, schizoaffective disorder with hallucinations, attention deficit/hyperactivity disorder ("ADHD"), obesity, diabetes mellitus, degenerative disc disease of the lumbar spine, mild osteoarthritis of the right knee, and a history of alcohol dependence.  (*Id*. at 22.)  The ALJ determined, however, that while the severe impairments significantly limit D.R.'s ability to perform basic work activities, they did not meet or equal the criteria of any listed impairment or of a combination of those impairments equivalent in severity to a listed impairment.  (*Id*. at 23–25.)  Thus, the ALJ determined that Claimant has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 CFR § 404.1567(a) in that he could lift and carry 10 pounds occasionally and 10 pounds frequently, stand and/or walk 6 hours in an 8-hour workday, and sit up to 6 hours in an 8-hour workday. (*Id*. at 25– 26.)  The ALJ noted that while Claimant required a hand-held assistive device, he remained free to lift and carry with the contralateral upper extremity consistent with the lifting limitations—i.e., while using a cane, he could lift with his other hand.  He could occasionally climb ramps and stairs,

but never climb ladders, ropes, or scaffolds.  He could occasionally balance as defined in the selected characteristics of occupations ("SCO"), and occasionally stoop, kneel, crouch, and crawl. He could occasionally reach overhead bilaterally, and he could tolerate occasional exposure to extreme cold and excessive vibration.  He should avoid all unusual hazards, defined as moving mechanical parts of equipment, tools, or machinery; electrical shock; working in high, exposed places; exposure to radiation; working with explosives; and exposure to toxic, caustic chemicals. And finally, he could understand, remember, and carry out simple instructions, have frequent interactions with supervisors and coworkers, deal with occasional changes in a routine work setting, and have no interactions with the public.  (*Id*.)

The ALJ concluded, based on D.R's age, education, work experience, and RFC, that there are a sufficient number of jobs in the national economy that he can perform.  (*Id*. at 32–34.)  Thus, the ALJ determined that Claimant was not entitled to receive disability benefits.  (*Id*. at 34–35.) Claimant thus filed the instant complaint seeking review of that decision.  (Doc. 1.)

## II.    Standard

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  The Commissioner's decision will be reviewed to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards.  *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  Substantial evidence requires more than a scintilla and is satisfied by such evidence as a reasonable mind might accept as adequate to support the conclusion.  *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  *Hendron v.*

3

*Colvin*, 767 F.3d 951, 954 (10th Cir. 2014).  "Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the [Commissioner's] conclusions are rational."  *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  *See Glenn*, 21 F.3d at 984.

The Commissioner has established a five-step sequential evaluation process to determine disability.  *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010).  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he is not working at a "substantial gainful activity."  *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  At step two, the agency will find non-disability unless the claimant shows that he has a severe impairment. At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  *Id*. at 751. If the claimant's impairment does not meet or equal a listed impairment, the agency determines the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520, 404.1545.  The RFC represents the most that the claimant can still do in a work setting despite her impairments.  *See Cooksey v. Calvin*, 605 F. App'x 735, 738 (10th Cir. 2015).  The RFC assessment is used to evaluate the claim at both step four and step five.  20 C.F.R. § 404.1520(e)-(g).

At step four, the agency must determine whether the claimant can perform previous work. If a claimant shows that she cannot perform the previous work, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant

numbers in the national economy. *Barnhart v. Thomas*, 540 U.S. 20, 25 (2003). To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995) (citing 42 U.S.C. § 423(d)(1)(A)). The claimant bears the burden of proof through step four. *Blea v. Barnhart*, 466 F.3d 903, 907 (10th Cir. 2006). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work existing in the national economy. *Id.*; *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. *Thompson*, 987 F.2d at 1487.

Finally, the ALJ must "articulate in every case how persuasive it finds the medical opinions and prior administrative medical findings of each medical source in the case record based upon consideration of all the regulatory factors in 20 C.F.R. § 405.1520c(c)(1-5)." *Kelly Renee K. v. O'Malley*, No. CV 22-2518-JWL, 2024 WL 775838, at *3 (D. Kan. Feb. 26, 2024) (citing 20 C.F.R. § 404.1520c(b)(1)). The two most important factors, which the ALJ must evaluate, are supportability (found in paragraph (c)(1)) and consistency (found in paragraph (c)(2)). *See* 20 C.F.R. § 404.1520c(b)(2). An ALJ does not have to consider the remaining three factors (found in paragraphs (c)(3) through (c)(5)), unless "two or more medical opinions or prior administrative medical findings are equally persuasive about the same issue." *Kelly Renee K.*, 2024 WL 775838, at *3 (quoting § 404.1520c(b)(3)). Failure to comply with 20 C.F.R. § 404.1520c is grounds for (1) reversal of the Commissioner's final decision, and (2) a remand such that the reviewing court can properly assess how the ALJ reached his conclusions. *See Parker v. Comm'r, SSA*, 772 F. App'x 613, 617 (10th Cir. 2019) (explaining that the SSA's legal error is grounds for reversal even if the decision appears supported by substantial evidence); *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (stating that applying the incorrect legal standards is grounds for reversal).

III.     **Analysis**

Claimant makes three[2] challenges to the ALJ's decision. First, the ALJ failed to adequately account for his being prescribed a walker when determining his RFC. (Doc. 11 at 19–23.) Second, the ALJ failed to adequately account for his hallucinations and other mental disorders when determining his RFC. (*Id*. at 23–36.) Third, the ALJ erred at step three in finding that Claimant only had moderate limitations due to his PTSD. (*Id*. at 36–37.) The Commissioner argues that substantial evidence supports the ALJ's conclusions. The court addresses Claimant's challenges in the sequence dictated by the five-step evaluation process rather than in the order presented in the brief. To wit, the agency first determines at step three whether a claimant's impairments meet or equal a listed impairment, and only if they do not does it assess the claimant's RFC for use at steps four and five. 20 C.F.R. § 404.1520(a)(4). The court therefore considers Claimant's step-three challenge to the listings and then turns to his challenges to the ALJ's RFC determinations.

A.  **The ALJ's Determination at Step Three Is Supported by Substantial Evidence**

Claimant challenges the ALJ's determination at step three, contending the ALJ's finding of only moderate limitations in the paragraph B criteria of listing 12.15 is not supported by substantial evidence. (Doc. 11 at 36–37.) At step three, the agency determines whether a claimant's impairments meet or equal one of the impairments the Commissioner has identified as presumptively disabling. *See Williams*, 844 F.2d at 751. "[T]he listings were designed to operate as a presumption of disability that makes further inquiry unnecessary," and for that reason the medical criteria defining them are set at a higher level of severity than the statutory standard. *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990).

---

[2] While Claimant lists four "Issues of Law"—numbered I, III, IV, and V—the issues numbered III and IV as argued in their respective subsections have significant overlap. (Doc. 11 at 15–16, 23–36.) The Commissioner points this out. (Doc. 17 at 10.) Accordingly, the court combines the discussion of those two challenges in Section III.C. *infra*.

Listing 12.15 addresses trauma- and stressor-related disorders and is satisfied only by a combination of its paragraphs: the medical criteria of paragraph A together with *either* the functional criteria of paragraph B or the "serious and persistent" criteria of paragraph C.  20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.15.[3]  The paragraph B criteria require an extreme limitation in one, or a marked limitation in two, of four areas of mental functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.  *Id.* § 12.15(B).

The ALJ found that Claimant established only moderate limitations in the four paragraph B areas, and therefore neither an extreme limitation in one nor a marked limitation in two.  (Doc. 6-3 at 22–24.)  Contrary to Claimant's contention, that finding was explained and supported.  It rested on the prior administrative medical findings of the two State agency psychological consultants, Matthew Turner, Ph.D., and Elizabeth Bergmann-Harms, Ph.D., both of whom concluded that Claimant's symptoms were most closely associated with moderate limitations under paragraph B.  (Doc. 6-4 at 23–26, 33–36.)  Further, the ALJ points to Claimant's psychology consultation treatment notes from the VA that support moderate limitations based on Claimant's responses to questions.  (*See* Doc. 6-11 at 235–59.)  In response, Claimant argues that his medical records from the VA documenting his mental health history support a finding of disability under step three.  (Doc. 11 at 28–29.)  However, beyond vague assertions, Claimant points to no medical source opining that his mental impairments dispositively satisfied the criteria of the 12.15 listing. Here, the ALJ set out his paragraph B findings at step three and, as the regulations permit,

---

[3] Claimant argues the ALJ erred because he "did not even discuss paragraph A or Paragraph C" under listing 12.15. (Doc. 11 at 37.)  There is no error.  First, the ALJ did assess the paragraph C criteria in depth.  (*See* Doc. 6-3 at 25.)  Second, because the ALJ found that Claimant had not demonstrated disability under paragraph B or C, there was no need for him to address paragraph A because the regulation requires either paragraph B or C be satisfied.  *See* 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.15 ("12.15 [is] satisfied by A and B, or A and C").

discussed the supporting evidence during the following RFC assessment. *Rene M. v. Kijakazi*, No. 20-CV-1371-EFM, 2023 WL 143228, at \*4 (D. Kan. Jan. 10, 2023) (reviewing court may look to the ALJ's discussion at later steps to determine the basis for the step-three finding). Here, the ALJ did just that, pointing to evidence that since the AOD, Claimant had not required crisis management, emergent treatment, or psychiatric stabilization and that his symptoms were manageable in an outpatient setting—findings inconsistent with what paragraph B requires. (Doc. 6-3 at 30–31.)

Read as a whole, the ALJ's decision permits meaningful judicial review of the step-three determination. *Wall v. Astrue*, 561 F.3d 1048, 1069 (10th Cir. 2009). An ALJ is required to consider all of the evidence but is not required to discuss every piece of it, and his failure to discuss the specific items Claimant identifies is not reversible error. *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). Because Claimant did not carry his burden of establishing that his impairments met or equaled listing 12.15, and because the ALJ applied the correct legal standard and supported his finding with substantial evidence, the court finds no error at step three. *See Duncan v. Colvin*, 608 F. App'x 566, 576 (10th Cir. 2015) ("Because [the claimant] has not satisfied all of the Listing's criteria, she cannot prevail at step three as a matter of law.").

If a claimant's impairment does not meet or equal a listed impairment, the agency determines the claimant's RFC. 20 C.F.R. §§ 404.1520, 404.1545. Thus, the court proceeds to Claimant's remaining arguments involving the ALJ's assessment of his RFC. (Doc. 11 at 19–36.)

**B.  The ALJ's Physical RFC Determination Is Supported by Substantial Evidence**

Next, Claimant argues that the ALJ failed to account for his prescribed walker in assessing his RFC and it is therefore not supported by substantial evidence. (*Id*. at 19–23.) In Claimant's view, a portion of an August 8, 2022, VA note (Doc. 6-10 at 157–158) prescribing a rollator

constitutes uncontroverted medical evidence that he requires a walker, and because the vocational expert ("VE") testified that a walker precludes all work, he contends the ALJ was required to include the device in the RFC or to reject it only on the basis of contrary medical evidence. (Doc. 11 at 19–23.) This argument might carry more force if the court reviewed the record *de novo* as the fact finder. But the court does not. The question is not whether some evidence could support a finding that a walker was required, but whether substantial evidence supports the ALJ's contrary determination. 42 U.S.C. § 405(g) ("[T]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."); *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (explaining that if conflicting medical evidence is presented, "[t]he trier of fact has the duty to resolve that conflict"). After reviewing the ALJ's decision and the record, the court concludes that the ALJ's RFC determination is supported by substantial evidence.

As a threshold matter, the premise of Claimant's argument—that the ALJ "took out the use of assistive devices completely"—is not accurate. (Doc. 11 at 11.) The RFC limited Claimant to a reduced range of sedentary work and expressly found that he "medically required a hand-held assistive device," while remaining free to lift and carry with the contralateral upper extremity consistent with the lifting limitations. (Doc. 6-3 at 25–26.) The ALJ thus accounted for Claimant's need for an assistive device by incorporating his use of a cane; the dispute is narrower than Claimant frames it and concerns only whether the ALJ was required to adopt a walker/rollator.

Contrary to Claimant's argument, the ALJ did explain why a walker was not included in the RFC. The ALJ found that the walker was "prescribed at his request for comfort's sake when walking long distances" and that Claimant "admittedly does not rely on the walker as he does the cane." (*Id*. at 23, 25.) That finding tracks Claimant's own testimony, in which he stated that he uses a cane and turns to the rollator only for longer distances because it provides a seat on which

to stop and rest. (*Id*. at 49.) The ALJ observed that while Claimant's gait was at times described as antalgic or as a slow cadence with small steps, the ALJ found his ability to ambulate was within normal limits. (*Id*. at 23, 27.) Further, the ALJ points to the Claimant's chiropractor, Jeffrey Warner, who over the course of multiple years noted that Claimant remained full weight bearing with nothing more than the need for a cane "sparingly." (*Id*. (citing Doc. 6-8 at 204, 217, 335, 397, 426.) Finally, the ALJ goes on to explain that Claimant did not attend many pain management and physical therapy appointments and failed to be compliant with prescribed treatment. This discussion is sufficient to permit meaningful judicial review of the ALJ's reasoning that, when limited to sedentary work, Claimant requires only a cane. *See* SSR 96-9p, 1996 WL 374815, at *7 ("[I]f a medically required hand-held assistive device is needed only for prolonged ambulation, . . . the unskilled sedentary occupational base will not ordinarily be significantly eroded.").

Claimant's argument that the ALJ rejected the need for a walker without any contrary medical evidence and instead substituted his own lay opinion is also unpersuasive. (Doc. 11 at 21–22.) The ALJ did not reject a treating opinion in favor of his own. Rather, the ALJ's determination rested on the prior administrative medical findings of the State agency medical consultants, Daniel Gwartney, M.D., and Edna Toubes-Klingler, M.D., both of whom reviewed the record and concluded that Claimant could perform a range of work with a cane and that a walker was not medically necessary. (Doc. 6-3 at 28–29 (citing Doc. 6-4 at 28, 38–39.) Those findings supplied the contrary medical evidence that Claimant says is absent and distinguishes this case from the line of authority on which he relies. (Doc. 11 at 20–21.) The August 8, 2022, note, moreover, does not stand uncontroverted in the manner Claimant suggests; the same record reflects that the walker was requested for comfort over long distances. (Doc. 6-3 at 23, 25.)

10

In any event, it is Claimant who bore the burden of demonstrating which limitations should have been included in his RFC, and he has not shown that the record compelled the inclusion of a walker. *See* 20 C.F.R. §§ 404.1545(a), 404.1546(c); *Howard v. Barnhart*, 379 F.3d 945, 948–49 (10th Cir. 2004) ("[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record."). That the record contains some evidence—the prescription note and the VE's response to a hypothetical—from which a different factfinder might have reached a contrary conclusion does not establish error. *Tammy F. v. Saul*, No. 20-1079-JWL, 2020 WL 7122426, at *7 (D. Kan. Dec. 4, 2020) ("The mere fact that there is evidence which might support a contrary conclusion is not sufficient to show error on the part of the ALJ."); *Lax*, 489 F.3d at 1084 ("We consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but we will not reweigh the evidence or substitute our judgment for the Commissioner's.") (internal quotation marks omitted). Accordingly, the contrary evidence cited by Plaintiff does not undermine the ALJ's conclusion.

Claimant also contends that the ALJ improperly discounted his knee impairment by observing that he required no surgery or other invasive intervention during the relevant period. (Doc. 11 at 29–31.) Namely, Claimant argues that while he underwent knee surgery in 2010, the lasting effects that contributed to his gait problems extended into the relevant period and should have been considered by the ALJ. But the ALJ did acknowledge that Claimant had undergone knee surgery before the relevant period and found that the objective evidence, including right knee imaging "show[ing] no more than minimal abnormalities," did not establish disabling limitations. (Doc. 6-3 at 27–28.) That the surgery predated the September 2020 onset date did not require the ALJ to presume continuing disability from it; it remained Claimant's burden to show disabling limitations during the relevant period, and he did not. *Howard*, 379 F.3d at 948–49. Rather,

substantial evidence supports the ALJ's finding that Claimant's right knee condition was not disabling.

In short, the ALJ's decision cited sufficient evidence in support of the RFC findings. The ALJ's discussion of Claimant permits the court to conclude that the ALJ found Claimant required only a cane when limited to sedentary work, and that finding is supported by Claimant's testimony and medical findings of the State agency consultants. The ALJ also considered the various medical opinions in the record and there was nothing improper regarding the limited weight that the ALJ gave the opinions of Claimant's caregiver. Because substantial evidence supports the ALJ's determination, the court finds no error. *See Biestek*, 587 U.S. at 103 (holding that substantial evidence requires "more than a mere scintilla" but the threshold "is not high").

### C.  The ALJ's Mental RFC Determination Is Supported by Substantial Evidence

Finally, Claimant argues that the ALJ ignored substantial evidence of his mental impairments and failed to explain why he did not include in the RFC a limitation reflecting that Claimant would be off task more than 10% of the workday. (Doc. 11 at 23–29.) Claimant contends that his VA treatment records show that his mental diagnoses force him to remove himself from whatever he is doing at least two times per week and therefore establish that he ought to be considered unemployable under SSR 96-9p. (*Id*. at 24–25, 29.) Claimant goes on to argue that because the VE testified that an individual off task 10% or more of the workday would be unable to perform the identified jobs, that the omission of an off-task limitation violated SSR 96-9p and left the Commissioner unable to carry his burden at step five. This argument ultimately asks the court to reweigh the evidence. The question on review is not whether the record could support an off-task limitation, but whether substantial evidence supports the ALJ's decision. *See* 42 U.S.C. § 405(g). Here, the court finds substantial evidence supports the ALJ's mental RFC determination.

The premise of Claimant's argument that the ALJ ignored the evidence of his mental impairments is not borne out in the ALJ's decision. In support of his argument, Claimant contends that his testimony at the hearing regarding his being off task and needing a caregiver throughout the day were ignored and, otherwise, the ALJ failed to controvert his testimony with proper evidence. (Doc. 11 at 25–26.) Additionally, he directs the court to "all of" Claimant's medical records that he contends support a contrary finding than that arrived at by the ALJ. (*Id*.) The court is not persuaded. First, the ALJ acknowledged Claimant's testimony that he experiences PTSD symptoms two to three times per week which interfere with his ability to focus and complete tasks. (Doc. 6-3 at 30.) The ALJ did not disregard this evidence; he weighed it and found such testimony to be consistent with "moderate psychological limitations." (*Id*.)

Namely, the ALJ found that, since the onset date and despite chronicled poor medication compliance, Claimant had not required crisis management or inpatient psychiatric stabilization, and that his symptoms were manageable in an outpatient setting with little intervention. (*Id*. at 30–32.) The ALJ further found that with regular medication use Claimant reported significantly fewer, less frequent, and more manageable symptoms, and that he often went weeks or months without his medications. (*Id*. at 32.) This is supported by substantial evidence including many appointments where providers noted that "[Claimant] has not been taking [his medications]" and that his symptoms worsen when that occurs. (*See, e.g.*, Doc. 6-10 at 1127, 1137, 1158, 1165.) Alternatively, with regular medication use, Claimant reported significantly improved symptoms. (*See, e.g.*, Docs. 6-8 at 796–97, 990; 6-9 at 149–52; 6-11 at 114–15.) The ALJ observed that if Claimant's symptoms were as limiting as alleged, it would be reasonable to expect more consistent treatment compliance. (Doc. 6-3 at 32.) In any event, the ALJ recognized the existence of certain mental impairments and thus included multiple limitations in Claimant's RFC: understanding only

13

simple instructions, not interacting with the public, and only occasional changes in work setting, among others.  (*Id*. at 26.)  The ALJ's conclusion that Claimant's mental impairments imposed no more than moderate limitations and did not require an off-task limitation in the RFC is supported by substantial evidence.  An ALJ need not discuss every piece of evidence, so long as the record demonstrates he considered it and explained why he rejected probative evidence.  *Keyes–Zachary v. Astrue*, 695 F.3d 1156, 1163 (10th Cir. 2012) (quoting SSR 06–03p) ("[T]he ALJ's decision is sufficient if it permits [the reviewing court] to 'follow the adjudicator's reasoning.'").  This, the ALJ did.  *Bales v. Colvin*, 576 F. App'x 792, 798–99 (10th Cir. 2014) ("Here, the ALJ thoroughly discussed the medical evidence, and there is no indication that, despite not expressly mentioning [the Claimant's] other medical problems, the ALJ did not take them into account.").

Claimant's next argument is that the ALJ overly relied on his activities of daily living—zoo trips, family barbeques, and attending concerts—in concluding that Claimant only had moderate psychological limitations as part of his RFC.  (Doc. 11 at 25–27.)  But the ALJ did not treat these activities in isolation, merely as a factor in assessing Claimant's RFC—which the ALJ can do.  *Maxwell v. Astrue*, 268 F. App'x 807, 811 (10th Cir. 2008) ("[T]he ALJ's RFC assessment was supported by substantial evidence [such as claimant's] activities of daily living").  The ALJ acknowledged that Claimant's attendance at such events was sporadic and that he was "somewhat limited" while engaging in these activities.  (Doc. 6-3 at 30.)  Nonetheless, the ALJ explained that the medical evidence and Claimant's testimony of his current lifestyle, considered as a whole, was simply incompatible with his claim that he cannot perform any sedentary work.  Rather, moderate psychological limitations were more consistent with the capacity to understand, remember, carry out simple instructions, tolerate occasional changes in a routine work setting, and interact with coworkers and supervisors but not the public.  (*Id*.)  That Claimant's testimony characterizes the

14

same evidence differently does not establish error; the ALJ's reading of the record is a permissible one, and "[t]he mere fact that there is evidence which might support a contrary conclusion is not sufficient to show error on the part of the ALJ."  *Tammy F.*, 2020 WL 7122426, at *7.

Claimant's next argument is that the ALJ's observation that symptoms as severe as alleged would be expected to require intensive mental-health treatment, home assistance, or residential care, is impermissible lay speculation.  (Doc. 11 at 33–35.)  First, the ALJ's observation about the level of treatment one would expect was not a medical opinion substituted for the record but a permissible assessment of whether Claimant's subjective allegations were consistent with his conservative treatment history.  *See* 20 C.F.R. § 404.1529(c).  The ALJ's mental RFC did not rest on his own lay assessment of the medical evidence.  It relied on the administrative medical findings of the two psychological consultants, Matthew Turner, Ph.D., and Elizabeth Bergmann-Harms, Ph.D., both of whom concluded that Claimant had only moderate limitations—consistent with the ALJ's RFC.  (Doc. 6-3 at 23–24, 32 (citing Doc. 6-4 at 23–26, 33–36.)  Neither those consultants nor any other medical source opined that Claimant's mental impairments would render him off task to a degree precluding all work.  Rather, they found Claimant would have moderate difficulties in understanding and remembering, interacting with others, maintaining concentration, and managing himself.  (*See generally* Doc. 6-4.)  This is consistent with the ALJ's RFC.  In fact, the only mention of being off task to a degree precluding all work comes from Claimant's own testimony.  (Doc. 6-3 at 60–62.)  And the ALJ stated that he considered that testimony and found it persuasive, in part, therefore requiring a reduction in his RFC.  (*Id*. at 32–33.)  Claimant therefore did not carry his burden of demonstrating that an off-task limitation belonged in the RFC.  Further, the ALJ was not required to include in his hypothetical to the VE an off-task limitation the ALJ found unsupported.  *Howard*, 379 F.3d at 948; *Smith v. Colvin*, 821 F.3d 1264, 1270 (10th Cir.

15

2016) ("The [ALJ] had to ask only about the effect of those limitations ultimately assessed; the judge did not need to ask about the effect of limitations that he didn't believe applied.").

Finally, SSR 96-9p does not compel a different result, as Claimant contends. (Doc. 11 at 26, 29.) That regulation establishes that a substantial loss of the ability to perform basic, sustained mental work activities significantly erodes the available job base, which often justifies a finding of disabled. *See* SSR 96-9p, 1996 WL 374815, at *9. But it does not require an ALJ to adopt an off-task limitation the evidence does not support. The Tenth Circuit has recognized that an ALJ may adequately account for a claimant's moderate mental limitations by restricting him to certain kinds of work activity and not finding the claimant disabled. *Smith*, 821 F.3d at 1268. Here, the ALJ found that the medical evidence supported moderate limitations and not a finding of disability.

Claimant separately argues that the ALJ ignored significant evidence of his mental impairments predating the relevant period, including his admission to a VA domiciliary from November 2018 to May 2019, when he was being treated for his hallucinations and related conditions. (Doc. 11 at 31–33.) But the ALJ did not ignore this evidence; he discussed Claimant's pre-onset inpatient treatment to the extent necessary. (Doc. 6-3 at 31–32.) *See Miller v. Comm'r, SSA*, No. 23-4034, 2024 WL 2844676, at *3 (10th Cir. June 5, 2024). Then the ALJ contrasted it with medical evidence indicating that since the onset date in 2020, Claimant has not required such significant medical intervention. (Doc. 6-3 at 31–32.) Therefore, the ALJ considered the evidence of Claimant's condition before the September 2020 onset date, discussed its weight, and then contrasted it with the evidence of Claimant's functioning during the relevant period. This is the very type of conflict an ALJ ought to resolve. *Pisciotta v. Astrue*, 500 F.3d 1074, 1078 (10th Cir. 2007) ("Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence." (internal quotation marks omitted)).

Stripped to its essence, Claimant asks the court to reweigh the evidence and to find that the evidence favoring an off-task limitation outweighs the contrary evidence the ALJ found persuasive. The court's standard of review prohibits it from doing so and compels it to affirm the Commissioner's findings when they are supported by substantial evidence. *Lax*, 489 F.3d at 1084 ("[W]e will not reweigh the evidence or substitute our judgment for the Commissioner's."). Under that standard, the court "looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations." *Biestek*, 587 U.S. at 103. Here, it does. The ALJ's decision not to include an off-task limitation in the mental RFC had substantial support: Claimant's treatment history, his improvement with medication, his range of daily activities, and the opinions of the state agency psychological consultants. The court finds that substantial evidence supports the ALJ's RFC findings and accordingly finds no error.

In summary, the court finds that the ALJ applied the correct legal standards and that his decision is supported by substantial evidence. At step three, the ALJ reasonably concluded that Claimant did not carry his burden of establishing that his impairments met or equaled a listing, including listing 12.15. In assessing Claimant's RFC, the ALJ evaluated both Claimant's physical impairments, including his use of a hand-held assistive device, and his mental impairments, including his alleged off-task limitations. Although there may be evidence which lends support to Claimant's position, the court is not to reweigh it. The court must affirm an ALJ's decision if substantial evidence supports it. *See Biestek*, 587 U.S. at 103. Here, it does.

## IV.     Conclusion

The Commissioner's decision denying Plaintiff's application is AFFIRMED. The clerk is directed to enter judgment in accordance with this order.

IT IS SO ORDERED. Dated this 16th day of July, 2026.

17

  s/ John W. Broomes
JOHN W. BROOMES
CHIEF UNITED STATES DISTRICT JUDGE

18